UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 12-4095 GW (FMOx) | Date | June 1, 2012 |
| Title | *eDrop-Off Chicago LLC, et al. v. Burke, et al.* | | |

Present: The Honorable    GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Wil Wilcox | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:         Attorneys Present for Defendants:

   Dominique R. Shelton              Ian C. Ballon
                         Lori Chang

**PROCEEDINGS:**   **PLAINTIFFS EX PARTE FOR VOLUNTARY DISMISSAL OF MIDLEY, INC., D/B/A PURSEBLOG.COM (FILED 5/13/12)**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. Plaintiffs' motion is **TAKEN UNDER SUBMISSION.** Court to issue ruling on or before July 11, 2012.

Amicus Curiae Electronic Frontier Foundation's Application to File Amicus Brief, is **DENIED.** Plaintiffs Application for Leave to File Under Seal Supplemental Declaration in Support of Motion to Dismiss, filed on May 29, 2012 is placed under seal and **DENIED.**

                                                        :     50

                                   Initials of Preparer   JG

<u>*eDrop-Off Chicago LLC, et al. v. Burke, et al.*</u>, Case No. 2:12-cv-04095
Further Consideration of *Ex Parte* Motion for Voluntary Dismissal of Purseblog.com

Plaintiffs eDrop-Off Chicago LLC and Corri McFadden (collectively "Plaintiffs") and defendant Midley, Inc. d/b/a Purseblog.com ("Midley") have filed supplemental briefs on the question of whether the Court should voluntarily dismiss Midley from this action so that the identical action pending before the Northern District of Illinois may proceed with Midley as a party to that case.[1] The Court recounted the procedural history that led to the unfortunate need for this motion in a tentative ruling it issued May 18. *See* Docket No. 16.

> Federal Rule of Civil Procedure 41(a)(2) provides as follows:
>
> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Fed. R. Civ. P. 41(a)(2). "[T]he decision to grant a voluntary dismissal under Rule 41(a)(2) is addressed to the sound discretion of the District Court." *Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143, 145 (9th Cir. 1982). "In ruling on a motion for voluntary dismissal, the District Court must consider whether the defendant will suffer some plain legal prejudice as a result of the dismissal. Plain legal prejudice...does not result simply when defendant faces the prospect of a second lawsuit or when plaintiff merely gains some tactical advantage." *Id.* (omitting internal citations); *see also WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1058 n.6 (9th Cir. 2011), *cert. filed*, 80 U.S.L.W. 3531 (U.S. Feb. 27, 2012) (No. 11-1069);

---

[1] Non-party Electronic Frontier Foundation ("EFF") applied for leave to file a brief as *amicus curiae* in support of Midley's position in this case. *See* Docket No. 29. Insofar as the issues have been adequately presented by the parties to this case, the Court would deny EFF's application. *See, e.g., Gabriel Techs. Corp. v. Qualcomm Inc.*, Civ. No. 08CV1992 AJB (MDD), 2012 WL 849167, *4 (S.D. Cal. Mar. 13, 2012). The Court would also deny Plaintiffs' request to file a sealed third-party declaration, *see* Docket Nos. 22, 22-1, 34, which is irrelevant to any of the issues germane to considering this procedural motion (though it might ultimately be relevant when the merits are at issue).

1

*Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001) ("A district court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result."); Schwarzer, Tashima, et al., California Practice Guide: Federal Civil Procedure Before Trial (2011) §§ 16:343-373.5, at 16-146 – 152.1; *id.* §§ 16:387-388, at 16-153.

"Legal prejudice" means "prejudice to some legal interest, some legal claim, some legal argument." *Smith*, 263 F.3d at 976 (quoting *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996)); *Westlands*, 100 F.3d at 97 (indicating that cases considering "legal prejudice" "focus on the rights and defenses available to a defendant in future litigation"). "For example, in determining what will amount to legal prejudice, courts have examined whether a dismissal without prejudice would result in the loss of a federal forum, or the right to a jury trial, or a statute-of-limitations defense." *Westlands*, 100 F.3d at 97.

Midley argues that it would suffer "plain legal prejudice" because of its (likely) inability to rely upon California's anti-SLAPP statute in the Illinois action and because of its inability to rely upon the Ninth Circuit's favorable *binding precedent* to it under the Communications Decency Act ("CDA"). The Court would reject the latter of these contentions based upon the same reasons it expressed on May 18 – namely that there is nothing preventing Midley from arguing the same points upon which the Ninth Circuit based its conclusion on the effect of the CDA and from arguing that the Illinois court should find the Ninth Circuit's decision in that regard persuasive, even if not controlling. *See* Docket No. 16, at 3. The Court also again will not conclude that Plaintiffs' filing in Illinois was dictated *solely* by an effort to forum shop. *See id.* at 3-4.

The parties have collectively directed the Court to only one decision that is *almost* squarely on point with respect to whether the effective denial of anti-SLAPP "rights" under California law can constitute the "legal prejudice" a court must consider in exercising its discretion under Rule 41(a)(2). That decision, *Davis v. Bonanno*, No. CV 08-03449 ODW (AJWx), 2008 U.S. Dist. LEXIS 79501 (C.D. Cal. Sept. 19, 2008), issued by Judge Otis Wright of this District in 2008, came down in favor of a voluntary dismissal of a California action so that the matter could proceed in Arizona. It concluded that the anti-SLAPP provisions of Arizona and California "provide[] similar protections"

2

such that plain legal prejudice would not exist. *See id.* at *11-12.

This case, however, concerns distinctions between California's anti-SLAPP law and *Illinois's* anti-SLAPP law (the Illinois Citizen Participation Act ("CPA")[2]) and Midley has endeavored to demonstrate that there are *not* similar protections under those laws. Midley argues that the CPA will not (or at least likely will not) apply to the speech activities involved in this case. Indeed, based upon the authority Midley has presented, it may very well be correct. Just this year, the Illinois Supreme Court circumscribed the scope of the CPA by construing the phrase "based on, relates to, or is in response to" in section 15 thereof "to mean *solely* based on, relating to, or in response to 'any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.'" *Sandholm v. Kuecker*, 962 N.E.2d 418, 430 (Ill. 2012). "Stated another way, where a plaintiff files suit genuinely seeking relief for damages for the alleged defamation or intentionally tortious acts of defendants, the lawsuit is not solely based on defendants's [*sic*] rights of petition, speech, association, or participation in government." *Id.* Such a suit, therefore, would not be subject to dismissal under the CPA. *See id.*

A *complete* loss of protection under a seemingly applicable anti-SLAPP law such as California's would appear to constitute "plain legal prejudice" under the characterization of that concept as discussed in such cases as *Smith* and *Westlands*.[3] While Plaintiffs respond that Midley would be free to argue that Plaintiffs were not "genuinely seeking relief for damages for the alleged defamation or intentionally tortious acts of defendants" so as to fit within *Sandholm*'s description for where the CPA *would* still apply, Plaintiffs obviously will not stipulate to that argument, and, considering the nature of the allegations in the Complaint, the Court has little confidence that Plaintiffs would succeed therein (though there is at least some element of Plaintiffs' case which seeks, in essence,

---

[2] The CPA:
> applies to any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.

735 Ill. Comp. Stat. 110/15.

[3] *Compare Camilli v. Grimes*, 436 F.2d 120, 124 (2d. Cir. 2006) (the loss of ability to file a malicious prosecution claim when the Rule 41(a)(2) dismissal is granted without prejudice - as opposed to with prejudice – is not "plain legal prejudice").

3

a prior restraint).

Plaintiffs have directed the Court to, and attempt to make much of, one case in which the Northern District of Illinois – in fact, the very same judge presiding over the Illinois action identical to this case – did find speech protected by the CPA. *See Satkar Hospitality Inc. v. Cook Cnty. Bd. of Review*, Case No. 10 C 6682, 2011 U.S. Dist. LEXIS 108644 (N.D. Ill. Sept. 21, 2011). Of course, the *Satkar* decision (which pre-dated the Illinois Supreme Court's decision in *Sandholm* in any event) involved petitioning activity. *See id.* at *2, 12-15.

Plaintiffs also argue that California's anti-SLAPP statute would not apply to this case even if the case were to remain in this forum. If the Court denies this motion, they are free to make that argument again if and when an anti-SLAPP motion is filed, but for now their position makes little sense. When they filed their Complaint, they did so in a California federal court and asserted only common law claims without specifying any particular state's law governing those claims. All involved had every right to assume that Plaintiffs were advancing claims under California law. *See Deutsch v. Turner Corp.*, 324 F.3d 692, 716 (9th Cir. 2003). In addition, what is involved here is speech over the Internet.[4] Why Plaintiffs believe such speech simply could not be understood as raising claims under California law (especially considering the location of their Complaint's filing) is something of a mystery.

To the extent that Plaintiffs argue California's choice-of-law analysis (*see, e.g., Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010)) would result in a determination that Illinois law would be applicable, at this point in time they only appear to rely on conflicts – such as those mentioned above – between California's anti-SLAPP

---

[4] This fact distinguishes the speech at issue from that involved in *Competitive Technologies v. Fujitsu Ltd.*, 286 F.Supp.2d 1118 (N.D. Cal. 2003) ("There is no authority suggesting that under Illinois choice of law rules, California would have a more significant interest, or indeed, any interest, in having its law applied to non-California speakers whose actions were taken in a proceeding in the District of Columbia.") (emphasis added). It also serves to distinguish *Schering Corp. v. First DataBank Inc.*, No. C 07-01142 WHA, 2007 U.S. Dist. LEXIS 50164 (N.D. Cal. Apr. 20, 2007), which, in any event, actually *favors* application of California's anti-SLAPP case if the case remains here (and supports the notion that it Midley would *not* be able to rely upon it if it were forced to defend in Illinois). *See id.*, at *17 ("California's legislative policies designed to deter baseless tort actions should have no bearing on actions filed in New Jersey.") (emphasis added); *id.*, at *20 ("Both parties had a justified expectation that California's anti-SLAPP statute would not be applied anywhere other than California.") (emphasis added); *id.* ("[R]estricting the anti-SLAPP mechanism to courts sitting in California would advance the values of 'uniformity and predictability of result.'").

4

procedure and the CPA. In the absence of controlling (*i.e.*, Ninth Circuit, California Supreme Court or, potentially, California Court of Appeals) authority to the contrary, with the apparent exception of statutes of limitation the normal choice-of-law analysis looks to whether there are conflicts between the two states' substantive claims for relief. *But see Deutsch*, 324 F.3d at 716-17 (applying governmental interest analysis to statutes of limitations); *Competitive Techs. v. Fujitsu Ltd.*, 286 F.Supp.2d 1118, 1158-59 (undertaking choice of law analysis with respect to anti-SLAPP laws because of anti-SLAPP's function as a "privilege"); *Schering Corp. v. First DataBank Inc.*, No. C 07-01142, 2007 U.S. Dist. LEXIS 50164, *9-26 (N.D. Cal. Apr. 20, 2007) (analyzing whether California anti-SLAPP statute would apply under New Jersey choice-of-law rules).

It would therefore appear that Midley's likely loss of any ability to rely upon an anti-SLAPP procedure were it forced to litigate in Illinois by way of a voluntary dismissal here leads to the conclusion that the Court should deny the instant motion.[5] While Midley also point to the deprivation of its ability to move for an award of attorney's fees under California's anti-SLAPP law based upon a voluntary dismissal if indeed Plaintiffs are allowed to voluntarily dismiss the case in order to pursue relief in Illinois,[6] the Court has no need to reach that argument if it believes that dismissal is not warranted because of the effect of the *Sandholm* decision. *See, e.g., South Sutter, LLC v. LJ Sutter Partners, L.P.*, 193 Cal.App.4th 634, 663-64 (2011) (recognizing defendant's right to seek award of attorneys' fees under anti-SLAPP law following voluntary dismissal before anti-SLAPP motion could be heard). Were the Court required to assess whether this alone could constitute sufficient "legal prejudice," it would conclude that it could not. Instead, the Court would view this effect by itself as merely a "tactical advantage" Plaintiffs would enjoy in Illinois, which is insufficient to demonstrate the

---

[5] This outcome does not necessarily preclude a motion that this action should be *transferred* to Illinois (or elsewhere). Such a motion may be pointless, however, depending on whether the Illinois transferee court would be obligated, in such a circumstance, to apply the transferor court's law. *See, e.g., Shannon-Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001).

[6] The CPA does, however, provide for attorneys' fee awards where appropriate. *See* 735 Ill. Comp. Stat. 110/25 ("The court shall award a moving party who prevails in a motion under this Act reasonable attorney's fees and costs incurred in connection with the motion."); *Satkar Hospitality Inc. v. Cook Cnty. Bd. of Review*, Case No. 10 C 6682, 2011 U.S. Dist. LEXIS 108644, *10-11 (N.D. Ill. Sept. 21, 2011).

necessary prejudice. *See Hamilton*, 679 F.2d at 145.[7]

Even if the Court were to conclude that there was an insufficient demonstration of "legal prejudice" here, there is one further fact that certainly could affect the Court's exercise of discretion under Rule 41(a)(2). Plaintiffs' counsel has apparently informed the Illinois court that Plaintiffs had reached a tentative settlement with Nancy Burke (previously a defendant in this case, currently a defendant in the Illinois action). *See* Docket No. 27-1, ¶ 2. If that settlement comes to fruition, the personal jurisdiction-based reason for Plaintiffs having filed in Illinois would no longer exist given Midley's decision to file an Answer here. At the same time, however, that factor could not change something that the Court believes does *not* constitute plain legal prejudice into something that *does* constitute such prejudice. The question would then be to what extent this Court has discretion to deny a Rule 41(a)(2) motion in the *absence* of plain legal prejudice. *Hamilton* stands for the proposition that a court must consider whether a defendant would suffer plain legal prejudice, whereas *Smith* appears to hold that a court must grant a Rule 41(a)(2) "unless" the defendant can demonstrate plain legal prejudice. *See Hamilton*, 679 F.2d at 145; *Smith*, 263 F.3d at 975. Were the Court to confront the question, therefore, it likely would require still further supplemental briefing on this seeming conflict in Ninth Circuit law concerning the Rule 41(a)(2) discretionary standard.

Finally, even if the Court were to reach the opposite conclusion and grant Plaintiffs' motion, as the Court noted in its prior tentative ruling, granting Plaintiffs' *ex parte* application would not necessarily mean that Plaintiffs could achieve that end unconditionally. *See Hamilton*, 679 F.2d at 146 ("The rule allows the court to attach conditions to the dismissal…to prevent prejudice to the defendant."). The only apparent "condition" Midley now requests if the Court grants the motion is for the Court to somehow retain "enough" jurisdiction to rule on an anti-SLAPP motion under California law. In other words, even if Midley loses this motion, it wants to win this motion. If the Court grants the motion, it would not entertain any further proceeding in this action. Even though a voluntary dismissal allows for an award of attorney's fees under

---

[7] If Midley is concerned about the possibility that Plaintiffs would dismiss the *Illinois* case without prejudice without any accompanying right under the CPA to request attorneys' fees despite that voluntary dismissal, that prospect – the voluntary dismissal of the Illinois action – is simply speculative at this point in time.

6

California's anti-SLAPP procedure, the voluntary dismissal Plaintiffs seek here is a voluntary dismissal in name only – the matter would proceed, but simply in a different forum.[8]

---

[8] To the extent Midley simply wants an award of fees, the Court could condition any voluntary dismissal on such an award (as opposed to awarding such fees under California's anti-SLAPP law), but it would be limited to any fees Midley incurred because of the need to rush in responding to Plaintiffs' two *ex parte* proceedings in this case. *See Westlands*, 100 F.3d at 97. Midley did not file a response to Plaintiffs' *ex parte* application for a temporary restraining order before the Court issued a ruling on that application. It did file a rushed response to Plaintiffs' *ex parte* application for voluntary dismissal, but at least part of that opposition would be useful to Midley in opposing this case in Illinois, if it proceeds there.