Marcia Hofmann (SBN 250087)
marcia@eff.org
Corynne McSherry (SBN 221504)
corynne@eff.org
Matthew Zimmerman (SBN 212423)
mattz@eff.org
ELECTRONIC FRONTIER
FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Amicus Curiae
ELECTRONIC FRONTIER
FOUNDATION

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDROP-OFF CHICAGO LLC, *et al*., | Case No. 2:12-cv-04095-GW-FMOx |
| Plaintiffs, | **AMICUS CURIAE BRIEF OF ELECTRONIC FRONTIER FOUNDATION IN SUPPORT OF DEFENDANT MIDLEY, INC., D/B/A PURSEBLOG.COM'S SPECIAL MOTION TO STRIKE THE PLAINTIFFS' COMPLAINT** |
| v. | |
| NANCY R. BURKE, *et al*. | |
| Defendants. | Date:    August 9, 2012 |
| | Time:    8:30 a.m. |
| | Courtroom 10, Spring St. |
| | The Honorable George H. Wu |

# <u>TABLE OF CONTENTS</u>

STATEMENT OF INTEREST ................................................................. 1

INTRODUCTION ................................................................................. 2

ARGUMENT ...................................................................................... 4

I.    The First Amendment and California Constitution Disfavor Prior
Restraints and Other Legal Infringements That Chill Speech. ............... 5

II.    The Communications Decency Act Broadly Shields Online Service
Providers Against State Law Claims Based on Statements Made By
Third Parties. .............................................................................. 6

    A.    Section 230 of the Communications Decency Act Provides
Strong, Unequivocal Legal Protections for Online Service
Providers. ........................................................................ 7

        1.    The Legislative History of the Communications Decency
Act Shows That Congress Intended the Statute to
Promote Free Speech and Self-Regulation. ..................... 10

    B.    The California Anti-SLAPP Statute Is Intended to Stop
Meritless Litigation Aimed at Chilling Constitutionally
Protected Expression. ........................................................ 13

CONCLUSION ................................................................................. 15

AMICUS CURIAE BRIEF OF ELECTRONIC
FRONTIER FOUNDATION

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bantam Books, Inc. v. Sullivan*,
    372 U.S. 58 (1963) ............................................................5

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) ...................................7, 8

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) ..................................7, 10

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) ..................................8, 9

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) .........................................8

*eCash Techs., Inc. v. Guagliardo*,
    210 F. Supp. 2d. 1138 (C.D. Cal. 2000) ......................14

*Fair Housing Council v. Roommates.com LLC*,
    521 F.3d 1157 (9th Cir. 2008) .......................................7

*Freedman v. Maryland*,
    380 U.S. 51 (1965) ..........................................................5

*Metabolife Int'l v. Wornick*,
    264 F.3d 832 (9th Cir. 2001) ....................................... 14

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539 (1976) ........................................................5

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ......................................8, 9

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) .......................................9

*Reno v. ALCU*,
    521 U.S. 884 (1997) .................................................11, 12

Case No. 2:12-cv-04095-GW-FMOx     AMICUS CURIAE BRIEF OF ELECTRONIC FRONTIER FOUNDATION

*Stanley v. Georgia*,
    394 U.S. 557 (1969) ............................................................................5

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
    190 F.3d 963 (9th Cir. 1999)...........................................................14

*Universal Commun. Sys. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007) .............................................................8

*Zango, Inc. v. Kaspersky Lab, Inc.*,
    568 F.3d 1169 (9th Cir. 2009)...........................................................9

*Zeran v. America Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998) ............6, 8, 10

## STATE CASES

*Barrett v. Rosenthal*,
    40 Cal. 4th 33 (Cal. 2006) .......................................................7, 8, 10

*Coltrain v. Shewalter*,
    66 Cal. App. 4th 94, 106-7 (1999) ...................................................14

*Damon v. Ocean Hills Journalism Club*,
    85 Cal. App. 4th 468 (2000)............................................................13

*Equilon Enterprises v. Consumer Cause, Inc.*,
    29 Cal. 4th 53 (2002)......................................................................14

*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*,
    37 Cal. App. 4th 855 (1995)............................................................13

*Paul for Council v. Hanyecz*,
    85 Cal. App. 4th 1356 (2001)..........................................................14

*Walker v. Parker, Covert & Chidester*,
    28 Cal.4th 811 (Cal. 2002) .............................................................14

*Wilbanks v. Wolk*,
    121 Cal. App. 4th 883 (2004)............................................................6

*Wilcox v. Superior Court*,
    27 Cal. App. 4th 809 (1984)............................................................14

-iv-

AMICUS CURIAE BRIEF OF ELECTRONIC
FRONTIER FOUNDATION

*Wilson v. Superior Court,*
    13 Cal. 3d 652 (1975).........................................................................6

*Wong v. Jing,*
    189 Cal. App. 4th 1354 (2010)..........................................................6

**FEDERAL STATUTE**

47 U.S.C. § 230 ........................................................................ *passim*

**STATE STATUTE**

California Code of Civil Procedure § 425.16 ..................................... *passim*

**FEDERAL CONSTITUTIONAL PROVISION**

U.S. Const. amend. I.................................................................5, 13

**STATE CONSTITUTIONAL PROVISION**

CA. Const. art. I, § 2.....................................................................6

**STATE LEGISLATIVE MATERIALS**

141 Cong. Rec. 22,046 (1995)........................................................11

141 Cong. Rec. H8470 (daily ed. Aug. 4, 1995) .................................11

AMICUS CURIAE BRIEF OF ELECTRONIC
FRONTIER FOUNDATION

**STATEMENT OF INTEREST**

The Electronic Frontier Foundation ("EFF") is a non-profit, member-supported digital civil liberties organization. As part of its mission, EFF has served as counsel or *amicus curiae* in key cases addressing user rights to free speech, privacy, and innovation as applied to the Internet and other new technologies. With more than 16,000 dues-paying members, EFF represents the interests of technology users in both court cases and in broader policy debates surrounding the application of law in the digital age, and publishes a comprehensive archive of digital civil liberties information at www.eff.org.

EFF has a substantial interest in this case because it concerns the scope of federal protections for Internet service providers as well as California's anti-SLAPP statute, both of which affect online free speech rights. To that end, EFF supports the expansive interpretation of Section 230 of the Communications Decency Act. This law has played a vital role in allowing millions of people to create and disseminate user-generated content through the Internet, enriching the diversity of online offerings. EFF is particularly concerned that the law not be used to chill free expression on the Internet by holding online services liable where the content in question originates with a third party.

EFF also has an interest in the sound and principled application of California's anti-SLAPP statute, California Code of Civil Procedure §§ 425.16, *et seq*. A broad interpretation of that law promotes free expression by ensuring that baseless

-1-

litigation intended to suppress participation in public debates is not only swiftly terminated, but also deterred.

Defendant Midley Inc., doing business as Purseblog, has consented to the filing of this brief. Plaintiffs do not consent to the filing of this brief.

## INTRODUCTION

In this case, plaintiffs eDrop-Off Chicago LLC and Corri McFadden seek to chill the free speech rights of defendant Purseblog and California residents who read the web site. The plaintiffs bear a heavy burden, however, as the Supreme Court has long held that any attempt to suppress expression in the form of a prior restraint is presumptively unconstitutional under the First Amendment. The California Constitution is even less tolerant of attempts to squelch speech, since its provisions protect a broader range of expression than the federal Constitution.

California's anti-SLAPP statute, California Code of Civil Procedure § 425.16, and binding Ninth Circuit precedent interpreting the Communications Decency Act, 47 U.S.C. § 230, offer substantive legal protections unique to California that protect online free speech and discourage frivolous lawsuits. CDA Section 230 provides online service providers, such as Purseblog, with broad immunity from suit stemming from the hosting of third-party speech. California's anti-SLAPP statute is intended to expeditiously resolve baseless lawsuits filed with intent to silence constitutionally protected speech. Taken in conjunction, and consistent with the intent of both Congress and the California legislature, these laws shelter online

-2-

expression and provide a quick end to frivolous litigation filed for the sole purpose of curtailing that expression.

The lawsuit filed by plaintiffs is a perfect example of the type of baseless suit Section 230 and the anti-SLAPP statute were designed to guard against. Relying on these statutory protections, defendant's motion to strike seeks to further the important value of free expression enshrined by the First Amendment and California's Constitution. In contrast, denial of defendant's motion will have two perverse effects: first, it will send a message to future litigants that a plaintiff can engage in costly, time-consuming, and meritless litigation without consequence. And, second, a denial will encourage Purseblog and other online services providers (including those based in California and those located elsewhere but read by California residents) to censor protected online expression to avoid the burdensome time commitments and financial expense of having to defend against litigation in the future — even in cases, like this one, where the plaintiffs have no likelihood of prevailing on the merits.

Accordingly, EFF respectfully urges the Court to grant defendant Purseblog's motion to strike, not only to safeguard free expression online, but also to deter plaintiffs, like those in this case, from wasting the valuable time and resources of the courts and those defendants forced to respond to frivolous lawsuits.

-3-

# ARGUMENT

The Internet is the most powerful medium of communication ever developed. It hosts a massive amount of information on virtually every subject known to mankind. The Internet enables people to quickly and easily access information about products, activities, and others' experiences, regardless of geographic location. It also makes it possible for individuals throughout the world to connect with each other directly and share information about anything they choose, including frank or unpopular opinions presented with hyperbole, invective and sharp criticism.

Congress recognized both the Internet's incredible potential and the crucial role that Internet intermediaries play in creating forums for both free speech and commerce online. It also realized that the only way to foster these forums is to ensure that intermediaries remain protected from legal claims. The centerpiece of Congress' approach was the Communications Decency Act, 47 U.S.C. § 230. By shielding intermediaries against most legal claims arising from speech by others on forums that they host, the law both encourages intermediaries to police speech on their forums and protects them if they cannot do so — a situation that is increasingly common for intermediaries that host a great deal of public speech.

Section 230 has worked as Congress anticipated. It has encouraged the growth of the Internet by allowing the free exchange of ideas and information throughout online communities. It has also allowed the flourishing of online services, including online auction websites like eBay and discussion forums such as Purseblog. When

-4-

AMICUS CURIAE BRIEF OF ELECTRONIC
FRONTIER FOUNDATION

combined with California's anti-SLAPP statute, Section 230 maximizes protections for the values enshrined in the First Amendment. Indisputably a provider of an "interactive computer service" squarely protected by the federal statute, Purseblog should not have been dragged into this litigation, a dispute between the plaintiffs and an individual who posted criticism of the plaintiffs.

## I.   The First Amendment and California Constitution Disfavor Prior Restraints and Other Legal Infringements That Chill Speech.

This lawsuit fundamentally targets Purseblog's online speech. The plaintiffs seek to use the judicial system to force Purseblog to remove content from the Internet and ban the site from publishing speech in the future. Compl. 15-16. As the United States Supreme Court has long held, however, prior restraints on speech and publication are presumptively unconstitutional because they are "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *Freedman v. Maryland,* 380 U.S. 51, 57 (1965); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70 (1963). Moreover, Purseblog readers within California and elsewhere enjoy a constitutional right to receive information through Purseblog. *See Stanley v. Georgia*, 394 U.S. 557, 568-69 (1969) (recognizing "the individual's right to read or observe what he pleases.").

As strong as these federal constitutional safeguards against censorship are, the California Constitution's protections for free speech are even more "definitive and inclusive" than those of the federal Constitution. *Wilson v. Superior Court*, 13 Cal.

3d 652, 658 (1975). Article I, Section 2 of the state Constitution provides, "every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." The speech published on Purseblog may not be core political expression, but it enjoys protection under the California Constitution. *Wong v. Jing*, 189 Cal. App. 4th 1354, 1366-67 (2010); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898-99 (2004).

The plaintiffs' litigation implicates myriad free speech interests. Congress and the California Legislature have made clear policy choices to protect these rights online and to provide expeditious termination of lawsuits attempting to infringe on these rights. The Court should grant defendants' motion to strike to deter future abusive litigation aimed at chilling protected speech online and to ensure that important free expression protections are vigorously enforced.

**II.    The Communications Decency Act Broadly Shields Online Service Providers Against State Law Claims Based on Statements Made By Third Parties.**

By its very terms, Section 230 provides online service providers like Purseblog a federal immunity against any cause of action that would hold them responsible for material supplied by third-party users of those services.   *Zeran v. America Online, Inc*., 129 F.3d 327, 330 (4th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998). As the California Supreme Court has noted, Congress intended this statutory

-6-

AMICUS CURIAE BRIEF OF ELECTRONIC FRONTIER FOUNDATION

protection to serve two important interests: to foster free expression online and to encourage those providing Internet services to make their own editorial decisions about third-party content without fear of legal action or liability. *Barrett v. Rosenthal*, 40 Cal. 4th 33, 62 (Cal. 2006).

A. **Section 230 of the Communications Decency Act Provides Strong, Unequivocal Legal Protections for Online Service Providers.**

Section 230 expressly protects people and entities that provide Internet services from state law causes of action arising from those activities, placing legal responsibility squarely where it belongs: on the parties who actually provide information through these services. *Fair Housing Council v. Roommates.com LLC*, 521 F.3d 1157, 1162-63 (9th Cir. 2008).

The statute unequivocally says that "no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1)[1]; *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102-05 (9th Cir. 2009) (explaining in detail that Section 230 shields all "publication decisions"). Furthermore, it makes clear that

---

[1] The statute expressly provides users and providers of an interactive computer service the same immunity. *See Batzel v. Smith*, 333 F.3d 1018, 1030 (9th Cir. 2003) ("the "language of § 230(c)(1) confers immunity not just on 'providers' of such services, but also on 'users' of such services."); *see also Barrett,* 40 Cal. 4th at 56-57 ("By declaring that no 'user' may be treated as a 'publisher' of third party content, Congress has comprehensively immunized republication by individual Internet users.").

AMICUS CURIAE BRIEF OF ELECTRONIC FRONTIER FOUNDATION

online service providers cannot be held liable for their decisions to restrict access to information: "No provider or user of an interactive computer service shall be held liable on account of . . . any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected[.]" 47 U.S.C. § 230(c)(2); *Barnes*, 570 F.3d at 1105. Section 230 goes on to require that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id*. at § 230(e)(3).

As courts interpreting section 230 have found, its breadth is clear and unequivocal: "By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Zeran*, 129 F.3d at 330. Courts throughout the country, including the Ninth Circuit, have applied its immunity broadly to encourage free speech on the Internet. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003); *Barrett*, 40 Cal. 4th at 39; *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *Universal Commun. Sys. v. Lycos, Inc.*, 478 F.3d 413, 415 (1st Cir. 2007).

Critical to this case, binding Ninth Circuit precedent holds that Section 230 preempts state law intellectual property and business torts, which are claims the

-8-

AMICUS CURIAE BRIEF OF ELECTRONIC FRONTIER FOUNDATION

plaintiffs have made against Purseblog here. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007); *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 (9th Cir. 2009).

Section 230 does not only shield providers from *liability* based on their decisions surrounding hosting of third party content, it also immunizes them from *suit* based on those decisions.  47 U.S.C. § 230(e)(3) ("*No cause of action may be brought* and no liability may be imposed under any State or local law that is inconsistent with this section.") (emphasis added); *see also Carafano*, 339 F.3d at 1125 ("Congress intended that service providers . . . be afforded immunity from suit"); *Ben Ezra, Weinstein & Co. v. AOL*, 206 F.3d 980, 983 (10th Cir. 2000) (holding Internet service provider "immune from suit under § 230").

This substantive protection ensures that online service providers do not have to waste valuable time and money defending against claims that have no likelihood of success in light of Section 230. Without this protection, the vast majority of service providers would simply choose to self-censor rather than risk protracted and expensive fact-intensive legal battles, a result that runs counter to Section 230's policy goals and undermines free expression online.  *See, e.g.*, *Nemet Chevrolet*, 591 F.3d at 254-255 (Section 230 immunity "is effectively lost if a case is erroneously permitted to go to trial.") (citation and internal quotation marks omitted).

AMICUS CURIAE BRIEF OF ELECTRONIC FRONTIER FOUNDATION

### 1.   The Legislative History of the Communications Decency Act Shows That Congress Intended the Statute to Promote Free Speech and Self-Regulation.

Congress had two objectives in enacting Section 230: to promote online speech and to encourage online services to regulate their own activities. The policy motivations underlying Congress's actions are written directly into the law. The findings Congress published to explain Section 230 provide, "[t]he Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity[.]" 47 U.S.C. § 230(a)(3). Moreover, "the Internet and other interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation[.]" *Id.* at § 230(a)(4). Consistent with those findings, the courts have consistently interpreted Section 230 expansively "to maintain the robust nature of Internet communication and, accordingly, to keep government interference in the medium to a minimum." *Zeran*, 129 F.3d at 330*; Batzel*, 333 F.3d at 1027 ("Congress wanted to encourage the unfettered and unregulated development of free speech on the Internet, and to promote the development of e-commerce."); *see also Barrett*, 40 Cal. 4th at 56 (Section 230 is "a strong demonstration of legislative commitment to the value of maintaining a free market for online expression.").

The legislative history of Section 230 further reflects Congress' goals in passing the law. Representative Christopher Cox noted that Section 230 would

AMICUS CURIAE BRIEF OF ELECTRONIC FRONTIER FOUNDATION

"protect [online service providers] from taking on liability . . . that they should not face . . . for helping us solve this problem" as well as establish a federal policy of non-regulation to "encourage what is right now the most energetic technological revolution that any of us has ever witnessed." 141 Cong. Rec. H8470 (daily ed. Aug. 4, 1995). And as Congressman Bob Goodlatte explained when urging the House of Representatives to pass the bill that eventually became Section 230:

> There is no way that any of those entities, like Prodigy, can take the responsibility to edit our information that is going to be coming in to them from all manner of sources onto their bulletin board.  We are talking about something that is far larger than our daily newspaper.  We are talking about something that is going to be thousands of pages of information every day, and to have that imposition on them is wrong.

141 Cong. Rec. 22,046 (1995).

Indeed, the Supreme Court echoed the importance of keeping the Internet free from regulation the next year when declaring that First Amendment protections apply to online speech: "government regulation of the content of speech is more likely to interfere with the free exchange of ideas than to encourage it." *Reno v. ALCU*, 521 U.S. 884, 885 (1997).

Congress's concern that imposing potential liability on providers who host thousands or even millions of messages might lead to overly cautious web site moderation or outright censorship is even more pressing today.  When Section 230

-11-

AMICUS CURIAE BRIEF OF ELECTRONIC FRONTIER FOUNDATION

was passed, about 40 million people used the Internet worldwide, and commercial online services in the United States had almost 12 million individual subscribers. *Reno*, 521 U.S at 850. Today, the number of worldwide Internet users has exploded to over 2 *billion* users.[2] The difficulties associated with policing third-party content have grown astronomically along with the number of people now regularly participating in discussions online.[3] These are concerns that fundamentally affect sites like Purseblog. The plaintiffs' complaint alleges that Purseblog is one of the forty "busiest" online forums in the world, with more than 300,000 registered members and 18 million published entries. Compl. ¶ 26. Purseblog could not host the content created by such an extensive Internet community if its operators were

---

[2] *See* "ITU Statshot," International Telecommunication Union [UN agency for information and communications technology], Issue 5 (Jan. 2011), http://www.itu.int/net/pressoffice/stats/2011/01/index.aspx.

[3] *See, e.g.*, news coverage and law enforcement attention to the problem facing Internet platforms regarding businesses posting fake or paid-for reviews: "Attorney General Cuomo Secures Settlement With Plastic Surgery Franchise That Flooded Internet With False Positive Reviews," Press Release, New York State Office of the Attorney General, July 14, 2009, http://www.ag.ny.gov/press-release/attorney-general-cuomo-secures-settlement-plastic-surgery-franchise-flooded-internet; "Firm to Pay FTC $250,000 to Settle Charges That It Used Misleading Online 'Consumer' and 'Independent' Reviews," Press Release, Federal Trade Commission, March 15, 2011, http://www.ftc.gov/opa/2011/03/legacy.shtm; Karen Weise, "A Lie Detector Test for Online Reviewers: Fake Reviews are Proliferating, and Researchers are Developing New Ways to Identify Them," Bloomberg Businessweek, Sept. 29, 2011, http://www.businessweek.com/magazine/a-lie-detector-test-for-online-reviewers-09292011.html; David Streitfeld, "For $2 a Star, an Online Retailer Gets 5-Star Product Reviews," New York Times, Jan. 26, 2012, http://www.nytimes.com/2012/01/27/technology/for-2-a-star-a-retailer-gets-5-star-reviews.html (discussing problem of businesses paying users to place positive reviews).

forced to police all commentary posted there under threat of crippling legal liability — nor could even larger services such as eBay, Yelp!, Facebook, Craigslist, or Twitter.

Granting defendants' motion in this case is consistent with the policies underlying Section 230.  Purseblog provides a venue where Internet users can share their thoughts and feedback as consumers — including their experiences purchasing products from sellers on eBay and elsewhere. Permitting this kind of frank discourse without government intervention advances Congress's goals of promoting robust dialogue and encouraging self-regulation on the Internet.

### B.   The California Anti-SLAPP Statute Is Intended to Stop Meritless Litigation Aimed at Chilling Constitutionally Protected Expression.

The California anti-SLAPP statute provides additional important speech protections above and beyond those supplied by Section 230. The statute targets strategic lawsuits against public participation ("SLAPPs"), filed in order to "dissuade or punish the exercise of First Amendment rights of defendants." *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.,* 37 Cal. App. 4th 855, 858 (1995), *superseded by statute,* § 425.16, *as recognized in Damon v. Ocean Hills Journalism Club,* 85 Cal. App. 4th 468, 477-78 (2000). In other words, SLAPPs may "masquerade as ordinary lawsuits," but are "generally meritless suits brought by large private interests to deter common citizens from exercising their political or

-13-

legal rights or to punish them for doing so." *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 816 (1984), *overruled on other grounds*, *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53 (2002).

In order to discourage this abusive litigation, the California Legislature enacted Section 425.16, which allows the defendant in such a suit to move to strike the complaint, and, if she prevails, recover attorneys' fees expended in connection with the motion. The anti-SLAPP statute allows for early dismissal of meritless cases aimed at chilling expression through costly, time-consuming litigation. *Metabolife Int'l v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). Or, as the California Supreme Court put it, the anti-SLAPP statute provides a mechanism for speedy and low-cost termination of abusive litigation. *Walker v. Parker, Covert & Chidester*, 28 Cal.4th 811, 816-817 (Cal. 2002). In addition to providing an early resolution of meritless litigation, the statute has the dual benefit of imposing a real penalty — in the form of fee shifting — to discourage further baseless litigation. *Equilon Enterprises*, 29 Cal. 4th at 63; *Paul for Council v. Hanyecz,* 85 Cal. App. 4th 1356, 1364 (2001).

Simply put, Section 425.16 has made California a less hospitable forum for frivolous lawsuits by preventing the use of a meritless pleading to obtain "an economic advantage over a citizen party by increasing the cost of litigation to the point that the citizen party's case will be weakened or abandoned, and of deterring future litigation." *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-71 (9th Cir. 1999) (citation omitted) (applying statute's

-14-

AMICUS CURIAE BRIEF OF ELECTRONIC FRONTIER FOUNDATION

protections in diversity case); *see also* § 425.16(a) ("The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process."). In keeping with that intent and California's constitutional commitment to protecting speech, the Legislature has stressed that the statute should be construed broadly, thereby maximizing the protections for speech in this state. *Id*. at § 425.16(a).

Denying defendant's motion to strike would directly contravene that intent. Here, the plaintiffs have brought a frivolous suit against a blog based on a third party's protected speech. Beyond attempting to censor speech, plaintiffs have also sought to avoid responsibility for their actions by trying to voluntarily withdraw their suit in California and by re-filing the case in a more "friendly" jurisdiction. These are precisely the types of costly, time-consuming, and unduly litigious actions California's anti-SLAPP statute was designed to prevent.

The Court should not countenance plaintiffs' attempts to dodge responsibility for filing a meritless suit. Under Section 425.16, the plaintiffs' complaint should be stricken and Purseblog should be entitled to attorneys' fees.

## CONCLUSION

Without expansive interpretations of Section 230 and the California anti-SLAPP statute, sites like Purseblog could not exist because they would simply be sued out of existence. Every time a court allows baseless litigation to proceed

-15-

AMICUS CURIAE BRIEF OF ELECTRONIC FRONTIER FOUNDATION

1   against an online service, the site's operators will feel the need to limit their legal

2   exposure by confining the site's discourse to "safe," less controversial topics. That

3   result hardly comports with the underlying policy of the legal protections for free

4

5   speech that Congress, California's Legislature, and the courts have recognized,

6   which are intended to create opportunities for the public to learn information and

7   participate in discussions about topics of public interest.

8

9   DATED:  July 16, 2012                    Respectfully submitted,

10
                                            ELECTRONIC FRONTIER FOUNDATION
11

12                                          _____/s/ Marcia Hofmann_____
                                            Marcia Hofmann, Esq.
13                                          Corynne McSherry, Esq.
                                            Matthew Zimmerman, Esq.
14                                          454 Shotwell Street
                                            San Francisco, CA 94110
15                                          Telephone:  (415) 436-9333
                                            Facsimile:   (415) 436-9993
16

17

18                                          *Counsel For Amicus Curiae*
                                            *Electronic Frontier Foundation*
19

20

21

22

23

24

25

26

27

28

-16-