*eDrop-Off Chicago LLC, et al. v. Burke, et al.*, Case No. CV-12-04095 GW (FMOx)
Initial Tentative Ruling on Special Motion to Strike Plaintiffs' First Amended Complaint

This case has been a case study in strategic procedural maneuvers – some shrewd and some, perhaps, ill-advised. The present proceeding maintains that hallmark.

Now pending before the Court is a special motion to strike pursuant to California Code of Civil Procedure § 425.16[1] filed by defendant Midley, Inc. dba Purseblog.com ("Midley"). Midley first filed an anti-SLAPP motion on July 9, 2012. *See* Docket No. 48. Plaintiffs eDrop-Off Chicago LLC ("eDrop-Off") and Corri McFadden (collectively, "Plaintiffs") filed an Opposition on July 19, 2010. *See* Docket No. 57. In connection with that motion and a request by Plaintiffs to be allowed to amend their Complaint, the Court concluded that application of California's anti-SLAPP law without allowing Plaintiffs to amend (or take discovery) would conflict with Rules 15 and 56 of the Federal Rules of Civil Procedure. *See* Docket Nos. 83, 92. It therefore allowed Plaintiffs to file a First Amended Complaint ("FAC"), which Plaintiffs did on November 6, 2012. *See* Docket Nos. 92, 96. Following that filing, the parties submitted further briefing designed to update Midley's anti-SLAPP motion and to take into consideration the new landscape of the case presented by the FAC. *See* Docket Nos. 101, 103, 104.

    A. <u>Anti-SLAPP as to the Now-Superseded Original Complaint</u>

As the above-discussion should make clear, this case has changed since the time when Midley filed its original anti-SLAPP motion. For one thing, whereas the Court was at least initially under the impression that Plaintiffs' original Complaint presented claims brought under California law, *see* Docket No. 36, at 4, Plaintiffs' FAC includes one claim brought under federal law and two claims brought under Illinois statutes – Lanham Act, Illinois Uniform Deceptive Trade Practices Act and Illinois Consumer Fraud and Deceptive Business Practices Act claim, respectively. The FAC also contains common law claims for defamation, trade libel, intentional interference with contractual relations, intentional interference with prospective economic

---

[1] By the time briefing was complete on this motion, Midley's motion had begun, in certain respects, to resemble a Rule 12(b)(6) motion. This made some sense in light of the federal court limitations on anti-SLAPP motions which could work to limit a court's consideration of such a motion to the face of the pleadings (and other Rule 12(b)(6)-permissible materials). Midley cannot rely on that limitation, however, to suddenly transform its anti-SLAPP motion into a Rule 12(b)(6) motion with respect to claims – such as Plaintiffs' Lanham Act claim – that are unquestionably not subject to its anti-SLAPP motion.

advantage, breach of contract, promissory estoppel and intentional infliction of emotional distress, along with a request/claim for declaratory relief.

One of Midley's responses to the change in Plaintiffs' allegations is to argue that Plaintiffs' *amendment* of their allegations is the effective equivalent of having *dismissed* their original claims that were the target of Midley's original anti-SLAPP motion. Where a plaintiff *voluntarily dismisses* an action after a defendant files an anti-SLAPP motion in California state court, the court still may award attorney's fees and costs under the anti-SLAPP statute's fee provision. *See Law Offices of Andrew L. Ellis v. Yang*, 178 Cal.App.4th 869, 879 (2009) (noting that, where a party dismisses its case while a motion to strike is pending, "the trial court is given the limited jurisdiction to rule on the merits of the motion in order to decide if it should award attorney fees and costs to the defendants"); *Moore v. Liu*, 69 Cal.App.4th 745, 751 (1999) ("[A] defendant who is voluntarily dismissed, with or without prejudice, after filing a section 425.16 motion to strike, is nevertheless entitled to have the merits of such motion heard as a predicate to a determination of the defendant' motion for attorney's fees and costs under subdivision (c) of that section."); *see also* Weil & Brown, California Practice Guide: Civil Procedure Before Trial ("Weil & Brown") (2011), § 7:1122, at 7(II)-56.[2] Moreover, even if the status of this case was considered more akin to a situation where a case is dismissed *by the court* prior to the hearing on the anti-SLAPP motion, fees would still be available in that circumstance as well. *See ARP Pharm. Servs., Inc. v. Gallagher Bassett Servs., Inc.*, 138 Cal.App.4th 1307, 1323 (2006); *Moraga-Orinda Fire Protection Dist. v. Weir*, 115 Cal.App.4th 477, 480 (2004); *White v. Lieberman*, 103 Cal.App.4th 210, 220 (2002); *Pfeiffer Venice Props. v. Bernard*, 101 Cal.App.4th 211, 218 (2002); *see also* Weil & Brown (2011), § 7:1124, at 7(II)-56 – 57; *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110-11 (9th Cir. 2003).

---

[2] But an award of fees in that circumstance is not automatic or mandatory – the court is essentially asked to consider the merits of the anti-SLAPP motion even though it no longer has jurisdiction to actually rule on the motion. *See Moore v. Liu*, 69 Cal.App.4th 745, 753 (1999) ("[A] plaintiff's voluntary dismissal of a suit, after a section 425.16 motion to strike has been filed, neither automatically precludes a court from awarding a defendant attorney's fees and costs under that section, nor automatically requires such an award."); *see also South Sutter, LLC v. LJ Sutter Partners, L.P.*, 193 Cal.App.4th 634, 663-64 (2011); *Law Offices of Andrew L. Ellis*, 178 Cal.App.4th at 879; *Coltrain v. Shewalter*, 66 Cal.App.4th 94, 107 (1998) ("We conclude that where the plaintiff voluntarily dismisses an alleged SLAPP suit while a special motion to strike is pending, the trial court has discretion to determine whether the defendant is the prevailing party for purposes of attorney's fees under…section 425.16[(c)]."); Weil & Brown, California Practice Guide: Civil Procedure Before Trial ("Weil & Brown") (2011), § 7:1123-1123.3, at 7(II)-56. *But see Pfeiffer Venice Props. v. Bernard*, 101 Cal.App.4th 211, 218 (2002) (disagreeing with *Coltrain* to the extent *Coltrain* indicated trial court has *discretion* to determine whether defendant is prevailing party for purposes of anti-SLAPP statute).

The question is whether a plaintiff's *permissive amendment* of allegations should be treated differently. The California state courts have not confronted this question because amendment in the face of an anti-SLAPP motion is not permitted in California state court either before or after the pending anti-SLAPP motion is heard, at least where the plaintiff is unable to demonstrate a probability of prevailing on the merits of the claims as they are pled in the *original* complaint. *See* Weil & Brown (2011), §§ 6:665.5-665.6, at 6-170; *id.* §§ 7:1076-1076.5, at 7(II)-52; *South Sutter, LLC v. LJ Sutter Partners, L.P.*, 193 Cal.App.4th 634, 666-67 (2011); *Schaffer v. City & Cnty. of San Francisco*, 168 Cal.App.4th 992, 1005 (2008); *Salma v. Capon*, 161 Cal.App.4th 1275, 1280, 1293-94 (2008); *Simmons v. Allstate Ins. Co.*, 92 Cal.App.4th 1068, 1073-74 (2001); *see also Nguyen-Lam v. Cao*, 171 Cal.App.4th 858, 863, 868-71 (2009) ("Where the evidence submitted for the motion enables the plaintiff to demonstrate the requisite probability of prevailing on the merits of her defamation claim, the policy concerns against amendment in the anti-SLAPP context do not apply because the plaintiff's suit – shown to be likely meritorious – is not a strategic lawsuit against public participation."); *id.* at 871-72 ("True, a plaintiff may not avoid or frustrate a hearing on the anti-SLAPP motion by filing an amended complaint but where, as here, the evidence prompting amendment is found in the declarations already submitted for the hearing, there is no risk the purpose of the strike procedure will be thwarted with delay, distraction, or increased costs."). *But see Law Offices of Andrew L. Ellis*, 178 Cal.App.4th at 881 ("*Simmons* did not hold that parties lose their right to amend a pleading upon the filing of an anti-SLAPP motion by the opposition. Rather, *Simmons* stated that parties lose that right after a court has made an adverse ruling by finding the moving party met its burden of proof and finding a prima facie showing has been made.").[3] In contrast, in federal court the opportunity for amendment is not foreclosed (or even limited to the circumstances presented in *Nguyen-Lam*). *See Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (reaching conclusion that opportunity for amendment in federal court is necessary in order to avoid conflict between California's anti-SLAPP statute and Fed. R. Civ. P. 15(a) and

---

[3] The California courts *have* confronted the situation where amendment occurs, not by way of a court's permission, but *as of right*, while an anti-SLAPP motion is pending. In that circumstance, the Court still resolves the anti-SLAPP motion filed in connection with the now-defunct version of the Complaint for purposes of resolving the question of anti-SLAPP fees and costs. *See Sylmar Air Conditioning v. Pueblo Contracting Servs., Inc.*, 122 Cal.App.4th 1049, 1055-56 (2004); *cf. Salma v. Capon*, 161 Cal.App.4th 1275, 1294 (2008) (indicating that "automatic dismissal" of amended claims is appropriate where plaintiff amends complaint before court rules on first anti-SLAPP motion).

noting that "the purpose of the anti-SLAPP statute, the early dismissal of meritless claims, would still be served if plaintiffs eliminated the offending claims from their original complaint").

As if the issue were not complicated enough, the Court already rejected Plaintiffs' efforts to voluntarily dismiss this action against Midley so that they could litigate the case in Illinois. *See* Docket No. 42. It reached that conclusion because of its determination that Midley would suffer "plain legal prejudice" were Plaintiffs allowed to voluntarily dismiss this case so as to allow for it to be litigated in Illinois, because Midley likely would be unable to take advantage of any anti-SLAPP law (either California's or Illinois's) in an Illinois forum. *See* Docket Nos. 36, 42-1.[4] At the same time, when it reached that "plain legal prejudice" conclusion, the Court indicated that it felt that the loss of the *ability to move for attorney's fees* due to a voluntary dismissal would not, by itself, constitute "legal prejudice" to Midley. *See* Docket No. 36, at 5-6 ("Midley also point [*sic*] to the deprivation of its ability to move for an award of attorney's fees under California's anti-SLAPP law based upon a voluntary dismissal if indeed Plaintiffs are allowed to voluntarily dismiss the case in order to purse relief in Illinois…. Were the Court required to assess whether this alone could constitute sufficient 'legal prejudice,' it would conclude that it could not.").

What few hints the Ninth Circuit has given about the availability of an anti-SLAPP motion, for purposes of a fee award, as to a now-superseded version of the complaint suggest that this course of action is *not* available. After all, in *Verizon*, the Ninth Circuit wrote "*[i]f* the offending claims remain in the first amended complaint, the anti-SLAPP remedies remain available to defendants."[5] *Verizon*, 377 F.3d at 1091 (emphasis added); *see also Vess*, 317 F.3d at 1102, 1110 (agreeing with district court that ruling on anti-SLAPP motion would be "premature" where amendment would be forthcoming); *IDEC Corp. v. Am. Motorists Ins. Co., Inc.*, No. C 02-1723 JF (RS), 2006 WL 2255235, *2 (N.D. Cal. Aug. 7, 2006). If it did not matter whether the amended complaint itself contained claims that were subject to the anti-

---

[4] This "plain legal prejudice" ruling simply meant that Midley still had the opportunity to argue for application of, and success under, California's anti-SLAPP statute. The voluntary dismissal-related proceedings were by no means a guarantee that Midley would *successfully* argue that California's anti-SLAPP statute could apply under the circumstances of this case, much less that it would prevail on the "merits" of such an anti-SLAPP motion.

[5] In light of that sentence, Midley should consider explaining its assertion that *Verizon* "merely held that granting a defendant's anti-SLAPP motion without leave to amend was inconsistent with federal procedure under rule 15, but did not rule on whether a plaintiff would nonetheless be subject to anti-SLAPP liability as a consequence of amendment." Docket No. 104, at 5:11-14 (emphasis added).

SLAPP statute, the Ninth Circuit would not have written that sentence. For that reason, if tasked with confronting the question, the Court would not resolve any anti-SLAPP motion, even if only for purposes of fee recovery, as to the original Complaint in this case. *See Brown v. Elec. Arts, Inc.*, 722 F.Supp.2d 1148, 1154-57 (C.D. Cal. 2010) (rejecting request for fees on successful anti-SLAPP motion with respect to initial complaint where leave was granted and plaintiff re-asserted same state claims in amended complaint)[6]; *Garcia v. Allstate Ins.*, No. 1:12-cv-00609-AWI-SKO 2013, 2012 WL 4210113 (E.D. Cal. Sept. 18, 2012).[7]

In Footnote 2 of its "Addendum" brief, Midley cites several federal district court cases, along with *ARP Pharmacy Services* and *Sylmar Air Conditioning*, as support for the proposition

---

[6] In *Brown*, the moving defendant responded to the reading of the *Verizon* case (as limiting the application of anti-SLAPP motions where the plaintiff has been allowed to amend the complaint) by raising the following argument:
> . . . . If, as the Ninth Circuit has suggested [in *Verizon*], a district court must give leave to amend when it grants a special motion to strike an initial complaint, and if, as [Brown] contends, a defendant who prevails on an anti-SLAPP motion cannot recover fees if the court gives leave to amend, then when could a . . . defendant recover fees for an initial anti-SLAPP motion? Under [Brown]'s interpretation of the statute, the answer may be "never." But this is not—and should not be—the law . . . .

*Brown*, 722 F.Supp.2d at 1156. However, the court in *Brown* roundly rejected that argument and stated:
> The Ninth Circuit answered the rhetorical question posed by [defendant] in *Verizon*. The court noted that, should a plaintiff refuse to re-assert the state law claims in its amended complaint as a result of the bringing of the initial special motion to strike, then the purposes of the state statute would still be served, thereby obviating the need to award fees otherwise available in the anti-SLAPP statute. *See Verizon*, 377 F.3d at 1091 ("[T]he purpose of the anti-SLAPP statute, the early dismissal of meritless claims, would still be served if plaintiffs eliminated the offending claims from their original complaint."). With regard to the present situation, where the plaintiff re-alleges the same state claims in its amended complaint, the Ninth Circuit likewise observed that "the anti-SLAPP remedies remain available to defendants." *Id.* [Defendant], however, would have this Court not only award the fees and costs it incurred in successfully dismissing any state law claims contained in the amended complaint but also retroactively award it the fees and costs it incurred with respect to the earlier initial complaint. The Ninth Circuit has foreclosed this result. The Ninth Circuit made this point clear in a later decision, characterizing this portion from its *Verizon* decision as standing for the proposition that "a *first amended complaint*" remained "subject to anti-SLAPP remedies," including the provision of fees and costs. *Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009) (emphasis added).

*Id.* at 1156-57.

[7] On October 29, 2012, the Court, after emphasizing that this issue was "something I have not ruled on and I don't know what the effect of it is," stated that it "would *presume – without having done any investigation or research myself*,…that the mere fact that you dismiss those causes of action under the substantive law which is the California SLAPP law that you can't get around SLAPP sanctions for that." Docket No. 97, at 7:21-8:7 (emphasis added); see also id. at 8:22-9:4 ("The question is what is the affect [sic] later on of having allowed them to amend to get rid of those claims. It is what it is. If in fact under California law or if in fact if the federal law were to somehow supersede the California law in this area and say, well, they could still amend and not be penalized for the SLAPP aspects, well, if that in fact is the law, then, hey, that's the law. But I don't know what the law is at this point."). The Court's comments should have made it pellucid that such views were, at the very least, preliminary.

that "[b]oth California and federal courts within the Ninth Circuit have ruled that a plaintiff cannot avoid anti-SLAPP liability by simply amending its complaint to drop claims that were the subject of a pending motion to strike." Docket No. 101, at 4:1-3 & n.2; *see Art of Living Found. v. Does 1-10*, No. 5:10-cv-05022-LHK, 2012 WL 1565281, *24-25 (N.D. Cal. May 1, 2012); *Plevin v. City & Cnty. of San Francisco*, 2011 WL 3240536, *4-5 (N.D. Cal. July 29, 2011); *Applied Med. Sys., Ltd. v. English*, No. 10cv1811 BEN (BLM), 2011 WL 6145704, *1-2 (S.D. Cal. Dec. 9, 2011); *Greenberg v. Murray*, No. SACV 10-375 AG (CTx), 2010 WL 2511309, *4 (C.D. Cal. June 14, 2010). *None* of those cases consider *Verizon* (or at least the portion of it quoted above[8]), which, as a reported Ninth Circuit decision, is seemingly binding on this Court. Unless Midley can direct the Court to some authority indicating that it – a district court, *cf., e.g., Wolfson v. Watts (In re Watts)*, 298 F.3d 1077, 1082-83 (9th Cir. 2002) (explaining when *a Ninth Circuit panel* can revisit an issue of state law an earlier panel has already decided) – is to *ignore* Ninth Circuit precedent on an issue of state law in favor of later[9] state intermediate appellate decisions (not a state *supreme court* decision) answering a question a different way – a state of affairs different from the question of what should happen when there is *no* Ninth Circuit precedent on a question of state law and the federal court is tasked with predicting whether or not the state supreme court would follow the state intermediate appellate courts' approach, *see, e.g.*, *McGregor v. Paul Revere Life Ins. Co.*, 369 F.3d 1099, 1101 (9th Cir. 2004) – this Court does not find those decisions cited in Footnote 2 of Midley's "Addendum" brief to be persuasive.[10]

---

[8] *Applied Medical Systems* quotes *Verizon* for the simple undisputed proposition that anti-SLAPP motions are available in federal court and that defendants are entitled to fees and costs when they prevail on such a motion. *See Applied Medical Systems*, 2011 WL 6145704, *1. *Greenberg* cites *Verizon* as support for giving the plaintiff leave to amend. *See Greenberg*, 2010 WL 2511309, *4.

[9] In fact, the state appellate court decisions *Plevin* relied on all *pre-dated Verizon*, meaning that those decisions could not possibly cause this Court or a later three-judge Ninth Circuit panel to deviate from *Verizon*. *See Plevin*, 2011 WL 3240536, *4.

[10] *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988), could be viewed as just such a decision. There, the Ninth Circuit agreed with the Tenth Circuit, which had ruled that a district court had erred by not reconsidering (because of an intervening state appellate court decision) an issue of state law that had already been decided on a prior appeal in the same case (thereby presenting a law of the case question). *See also Johnson v. Symantec Corp.*, 58 F.Supp.2d 1107, 1111 (N.D. Cal. 1999) (suggesting that a federal circuit court of appeal's "prediction of state law is not binding in the same way as is its definitive interpretation of federal law," though "as a practical matter a circuit court's interpretations of state law must be accorded great deference by district courts within the circuit"). Of course, here, the *Verizon* decision itself was *premised* on the existence of *Erie* problems given the conflict with the Federal Rules of Civil Procedure that would result from a strict application of California's anti-SLAPP statute. Later California appellate decisions – such as *ARP Pharmacy Services* and *Sylmar Air Conditioning* – obviously have no reason to consider *Erie* questions such as those facing the *Verizon* court. Thus, even if *Verizon* was *then* wrong, or should *now* be considered to be wrong, about California law, it is not at all clear that this would affect the

Of course, this entire question of whether Midley should be awarded fees under California Code of Civil Procedure § 425.16(c) with respect to the initial complaint would be pointless in any respect if Midley is able to successfully demonstrate an entitlement to fees in connection with the FAC. It is to that analysis, therefore, that the Court now turns.

B. Anti-SLAPP Directed at the FAC

The first question that must be answered is whether California's anti-SLAPP law (the only one Midley has attempted to use in its motion) would even apply to Plaintiffs' claims. Plaintiffs argue that California's anti-SLAPP statute does not apply to claims under federal law or to the two claims they have specifically asserted under Illinois statutory law. They also allege that the remaining state law claims – at least claims 4 through 10 – should be interpreted under Illinois law because of choice of law principles.

1. Lanham Act

The answer is simplest with respect to Plaintiffs' one (or two[11]) federal claim(s). Midley could not prevail on its anti-SLAPP motion insofar as Plaintiffs' Lanham Act claim is concerned because "the anti-SLAPP statute does not apply to federal law causes of action." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010). *But see cf. Vergos v. McNeal*, 146 Cal.App.4th 1387, 1392 (2007) ("Federal civil rights claims brought in California state courts are subject to section 425.16 motions."); *Bradbury v. Superior Court (Spencer)*, 49 Cal.App.4th 1108, 1117-18 (1996).

2. Illinois Statutory Claims

The question is slightly more complicated with respect to the FAC's two claims for violation of Illinois statutes. While it is true that this Court obviously sits within the State of

---

Ninth Circuit's approach to the issue. Of course, the *Verizon* decision principally considered the availability of amendment, not the continued pursuit of a fee motion under the anti-SLAPP statute. Nevertheless, considering all of the variables that a court would itself have to consider for purposes of determining whether *Verizon* was still good law (*Art of Living*, *Plevin*, *Applied Medical Systems* and *Greenberg* having considered none of them, in light of their failure to even acknowledge *Verizon* and/or to consider the quoted portion this Court highlights), this Court feels that it is the Ninth Circuit that is best-suited to decide that question. *See generally Ceron v. Holder*, 712 F.3d 426, 430-32 (9th Cir. 2013); *id.* at 435 & n.4 (Ikuta, J., dissenting); *Wolfson v. Watts (In re Watts)*, 298 F.3d 1077, 1083-87 (9th Cir. 2002) (O'Scannlain, J., concurring) ("We also permit our panels to use the big eraser when the earlier decision is based on state law that has demonstrably changed in the intervening period. Herein lies the rub. A proposition's demonstrability depends on the audience's receptivity. How skeptical must we ask our panels to be when they are urged to exercise the power to overrule in light of a supervening change in the underlying law?"). As a result, it will continue to follow what it understands is Ninth Circuit precedent on this question.

[11] Claim 11 is a claim for declaratory relief in which Plaintiffs invoke the Declaratory Judgment Act, 28 U.S.C. § 2201. *See* FAC ¶ 120.

California, Plaintiffs' two state statutory claims are plainly based on Illinois statutes, and involve conduct that has, as its only connection to California, the fact that it involved speech over the Internet and the Internet, of course, is accessible in – and viewable by residents of – California. Under California's choice of law rules, to which this Court looks, *see Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009), California will apply its own rule of decision unless a party invokes the law of a foreign state that 'will further the interest of the foreign state and therefore that is an appropriate one for the forum to apply to the case before it." *Id.* Insofar as eDrop-Off is an Illinois limited liability company and McFadden is an Illinois resident and citizen, Illinois's interests would plainly be furthered by Plaintiffs' plain invocation and attempted enforcement of the Illinois statutes at issue here. *Cf. Tylka v. Gerber Prods. Co.*, 182 F.R.D. 573, 577-78 (N.D. Ill. 1998); *compare Potomac Leasing Co. v. Chuck's Pub, Inc.*, 509 N.E.2d 751, 759 (Ill. App. Ct. 1987) (refusing to apply Illinois Consumer Fraud and Deceptive Business Practices Act because court did "not believe that there is a sufficiently strong or fundamental public policy interest to justify overriding *the parties* [*sic*] *choice* of Michigan law to govern the agreement") (emphasis added).

Midley contends that Plaintiffs should be estopped from arguing that Illinois's laws apply to this case by virtue of application of judicial estoppel. But as Midley itself admits, application of judicial estoppel requires that the party against whom it is asserted gained an advantage by asserting an earlier position and then later sought to gain yet another advantage by taking a clearly inconsistent position. Midley has not explained how Plaintiffs gained any advantage from their earlier seeming invocation of California law.

Midley also argues that the Court should not "reconsider" its prior ruling – presumably meaning the ruling that the claims in the original Complaint were claims under California law. By considering a later version of a complaint, which on its face alleges two Illinois statutory claims that simply were not in the original Complaint, the Court is not *reconsidering* – nor, obviously, "*relitigating*," Docket No. 101, at 7:2 – a ruling it made in connection with the original Complaint.

Apart from an abbreviated assertion that California law would apply here even if the Court were to "reconsider" or "relitigate" its earlier ruling that Plaintiff's original claims were California law claims, Midley advances no sustained effort to argue that Plaintiffs' two Illinois statutory claims should be analyzed by way of California's anti-SLAPP statute. Whatever the

Court might conclude about Plaintiffs' common law claims in the FAC, Midley has directed the Court to no case that stands for the proposition that claims based upon the statutory law of a foreign state should be analyzed by way of California's anti-SLAPP statute. The one case Midley does cite for its assertion that California's anti-SLAPP statute should apply regardless of the source of applicable substantive law, *Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003), which involved the question of whether or not to apply California's statutes of limitation, did not appear to have involved any *statutory* claims explicitly brought under some other state's[12] laws. *See id.* at 704-06, 716; *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F.Supp.2d 1123, 1130-31 (N.D. Cal. 2012) ("In *Deutsch*, the Ninth Circuit specifically addressed choice-of-law issues in applying the statute of limitations for state common law claims.").

        Plaintiffs assert that Midley "concedes" that California's anti-SLAPP statute does not cover Plaintiffs' Illinois statutory claims. *See* Docket No. 103, at 8:16-9:4. The Court does not believe that Midley goes quite that far (as Midley confirms in its last brief on this motion, *see* Docket No. 104, at 8:17-9:5). Nevertheless, apart from Midley's unconvincing citation to *Deutsch* and its misapplied stabs at having the Court apply notions of judicial estoppel or principles applicable to the "law of the case" doctrine and/or a court's ability to "reconsider" its own interlocutory decisions in a case, Midley's argument in its "Addendum" goes no further. In its final brief on the subject, Midley provides no further reason for applying California's anti-SLAPP statute to Plaintiffs' Illinois claims, other than by way of attempting to distinguish *Schering Corp. v. First Databank, Inc.*, No. C 07-1142 WHA, 2007 WL 1176627 (N.D. Cal. Apr. 20, 2007), a case upon which Plaintiffs attempt to rely and which is discussed *infra*.

        One might conclude that would be the end of the story, and on that showing the Court would *not* apply California's anti-SLAPP statute to Plaintiffs' two Illinois statutory claims. However, the Court must account for the wrinkle that is at play because of a particular aspect of California's choice of law rules.[13] Under California's approach, conflicts/choice of law analyses

---

[12] *Deutsch did* involve claims under the Alien Tort Claims Act, and the Ninth Circuit applied *that statute's* limitations period as to those claims. *See Deutsch*, 324 F.3d at 717. Notwithstanding the fact that it does not appear any foreign state statutory claims were involved in *Deutsch*, at least one district court has read that case to apply to situations where foreign state statutes were involved. *See Virginia v. McKesson Corp.*, No. C 11-02782 SI, 2013 WL 1287423, *2 (N.D. Cal. Mar. 28, 2013). To the extent that decision was based, in that regard, solely on *Deutsch*, this Court disagrees with it.

[13] Where a plaintiff has affirmatively chosen the statute(s) of a particular state as the basis for one or more of his, her or its claims, it is seemingly, at a minimum, a little strange to consider choice of law or conflicts of law issues. The logical presumption is that it makes little sense to apply anything other than the chosen state's law to the state statute

typically must be conducted for *each* issue in a case. *See Beech Aircraft Corp. v. Superior Court (Aanestad)*, 61 Cal.App.3d 501, 518-19 (1976) (indicating that governmental interest analysis must be conducted with respect to each issue); *see also S.A. Empresa de Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981) ("A separate choice-of-law inquiry must be made with respect to each issue in a case.") (applying California choice-of-law analysis); *Ribbens Int'l, S.A. de C.V. v. Transport Int'l Pool, Inc.*, 47 F.Supp.2d 1117, 1120 (C.D. Cal. 1999) ("[U]nder California conflict of law principles, the Court is obligated to conduct a separate choice-of-law analysis as to each issue presented for decision."). "As a default, the law of the forum state will be invoked, and the burden is with the proponent of foreign law to show that the foreign rule of decision will further the interests of that state." *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010).

There is some reason to question, however, whether application of an anti-SLAPP statute is the type of question such an analysis is even designed to deal with. Specifically, the analysis usually manages problems with determining which of one or more states' *substantive* laws would apply to a case. To wit,

> California applies the "governmental interest" approach to conflicts issues…. *Id.* Under this approach,
>> (1) the court examines the <u>substantive</u> laws of each jurisdiction to determine whether the laws differ as applied to the relevant transaction, (2) if the laws do differ, the court must determine whether a true conflict exists in that each of the relevant jurisdictions has an interest in having its law applied, and (3) if more than one jurisdiction has a legitimate interest ... the court [must] identify and apply the law of the [jurisdiction] whose interest would be more impaired if its law were not applied. Only if both [jurisdictions] have a legitimate but conflicting interest in applying its own law will the court be confronted with a "true conflict" case.

*Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010) (underline added) (quoting *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001); *see also CRS Recovery*, 600 F.3d at 1141 ("When a federal court sits in diversity to hear state law claims, the

---

at issue. Yet, at least one district court case employing California's governmental interest analysis has engaged in a choice of law examination, notwithstanding the plaintiff's selection of a particular state's – there, California's – statute upon which to base its claim. *See Axis Reinsurance Co. v. Telekenex, Inc.*, No. 12-2979 SC, 2012 WL 6632180, *9 (N.D. Cal. Dec. 19, 2012). In that case, the court ultimately determined that the plaintiff's choice of a California statute was appropriate – California law applied under a choice of law analysis. *See id.* at *9-10.

conflicts laws of the forum state – here California – are used to determine which state's <u>substantive</u> law applies.") (emphasis added); *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001) ("A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling <u>substantive</u> law.") (emphasis added); *Arno v. Club Med Boutique Inc.*, 134 F.3d 1424, 1425 (9th Cir. 1998) ("A substantive choice of law analysis is required…only if the availability of attorneys' fees is considered to be a substantive rather than a procedural issue under California law."); *Boaz v. Boyle & Co.*, 40 Cal.App.4th 700, 713 (1995) ("The circumstances of this case – including the site of the tortious acts and their manifestation, and the lack of a significant California connection to those events – provide strong reasons to believe that a California court would look to the substantive law of New York."); *Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc.*, 38 Cal.App.4th 1532, 1541 (1995) (remarking, in case involving contractual choice of law provision, that "some conflict of laws cases have distinguished between 'procedural' and 'substantive' law").

Of course, if California's anti-SLAPP law falls on the procedural side of the substantive-procedural divide, that only suggests further that California's anti-SLAPP statute *would* apply here, even to Plaintiffs' Illinois statutory claims. "It is true that while courts generally enforce substantive rights created by the laws of other jurisdictions, procedural laws of the forum state are to be applied." *Roberts v. Home Ins. Indem. Co.*, 48 Cal.App.3d 313, 318 (1975); *see also World Wide Imports, Inc. v. Bartel*, 145 Cal.App.3d 1006, 1012 (1983) ("It is well established that while the courts generally enforce the substantive rights created by the laws of other jurisdictions, the procedural matters are governed by the law of the forum. As defined in the case law, the terms 'practice' and 'procedure' include the mode of procedure by which a legal right is enforced as distinguished from the substantive law which gives or declares the right.").

Yet, even the basic question these observations pose is not easily resolved here because there is *zero* consistency in the case law with respect to whether California's anti-SLAPP statute is a substantive law or a procedural device. Though the California Supreme Court has labeled it only a "procedural device," the Ninth Circuit has frequently (even subsequent to the California Supreme Court's characterization) referred to California's anti-SLAPP statute as a "substantive" statute. *See, e.g.*, *DC Comics v. Pacific Pictures Corp.*, 706 F.3d 1009, 1016 (9th Cir. 2013); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 971, 973 (9th Cir. 1999). *But see Kibler v. N. Inyo Cnty. Local Hosp. Dist.*, 39 Cal.4th 192, 201-02 (2006) ("The [§

11

47(b)] privilege is a substantive rule of law, whereas the anti-SLAPP statute is a procedural device to screen out meritless claims.")[14]. At times, that has merely been an observation made in the course of considering an *Erie* question. *See CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007); *Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003); *Newsham*, 190 F.3d at 973. At other times, the Ninth Circuit has observed that California's anti-SLAPP statute has *both* procedural and substantive components. *See Verizon*, 377 F.3d at 1091; *Newsham*, 190 F.3d at 971. At still other times, the Ninth Circuit has characterized California's anti-SLAPP statute – specifically section 425.16(b)'s special motion to strike vehicle itself and the availability of fees and costs under section 425.16(c) – as "California procedural rules." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845 (9th Cir. 2001) (summarizing *Newsham*). Making this discussion and analysis even murkier for present purposes, *none* of these discussions involved choice/conflict of law questions.

Equally illustrative of either a clear (though unstated) answer or a distinct (though unstated) unwillingness to wade into this morass, a Westlaw search of all published California Supreme Court and California Court of Appeal decisions uncovers *zero* cases in which those courts have undertaken a "governmental interest" choice/conflict of law analysis in connection with California's anti-SLAPP statute. In the end, therefore, it is far from clear just how, if at all, California's governmental interest analysis would work in the application of California's anti-SLAPP statute to statutory claims that are unquestionably brought pursuant to another state's statutes.

Notwithstanding the above-delineated confusion, it is quite possible that this

---

[14] *Kibler* is not the only example of the California courts reaching this conclusion. *See Soukup v. Law Offices of Herbert Hafif*, 39 Cal.4th 260, 280 (2006) ("The anti-SLAPP statute is a procedural statute, the purpose of which is to screen out meritless claims."); *Rusheen v. Cohen*, 37 Cal.4th 1038, 1055-56 (2006) ("The Legislature enacted Code of Civil Procedure section 425.16 – known as the anti-SLAPP statute – to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights."); *Chodos v. Cole*, 210 Cal.App.4th 692, 700 (2012); *Tuszynska v. Cunningham*, 199 Cal.App.4th 257, 265 (2011); *Jocer Enters., Inc. v. Price*, 183 Cal.App.4th 559, 575 (2010) ("Here, the filing of a defensive anti-SLAPP motion by appellants' counsel would not constitute malicious prosecution, as subsidiary procedural actions or purely defensive actions cannot be the basis for malicious prosecution claims.") (omitting internal quotation marks); *Ingels v. Westwood One Broad. Servs.*, Inc., 129 Cal.App.4th 1050, 1061 (2005) ("Section 425.16 provides a procedural remedy to a party who perceives that an action qualifies as a strategic lawsuit against public participation (SLAPP)."); *Bouley v. Long Beach Mem'l Med. Ctr.*, 127 Cal.App.4th 601, 613 (2005) ("[W]hen Code of Civil Procedure section 425.16, the anti-SLAPP statute, was enacted, it was applied to pending cases as a procedural statute, as was a change in the anti-SLAPP law, which removed certain claims from the ambit of that law and deprived a defendant of a defense which existed at the time the case was filed."); *Physicians Comm. for Responsible Med. v. Tyson Foods, Inc.*, 119 Cal.App.4th 120, 127 (2004) (cataloging decisions construing section 425.16 as procedural statute); *Paul v. Friedman*, 95 Cal.App.4th 853, 862 (2002).

governmental interest query is a red herring, with little effect or meaning other than *vis a vis* an academic one.  Two district courts have considered application of California's anti-SLAPP statute to events having either very little or nothing to do with California; both concluded that it simply would not apply.

In *Competitive Technologies v. Fujitsu Ltd.*, 286 F.Supp.2d 1118 (N.D. Cal. 2003), the court made use of choice of law rules (both California's and Illinois's, because the outcome remained the same regardless, and it was unclear which would definitively apply because of the manner of transfer of the case from Illinois federal court) to assess whether California's anti-SLAPP law would apply to unfair competition counterclaims (which could have been brought under California, Illinois or Connecticut law) and abuse of process counterclaims (which the court concluded could not be maintained under either state or federal law).  *See id.* at 1125, 1151, 1155-59.  In that case, in the course of assessing Illinois's choice of law principles, the court employed "depecage" – an Illinois principle the court described as "identify[ing] each issue raised in the case and then determin[ing] the controlling law on an issue-by-issue basis," *id.* at 1158 – to conclude that California did *not* have a significant interest in having its anti-SLAPP law applied because the speakers in question had little relationship to California, were not "California speakers," and the speech in question occurred in a proceeding in the District of Columbia.  *Id.*  The Court likewise concluded that California's anti-SLAPP law would not apply using California's choice of law rules because the parties were not California residents, and the tortious conduct and injury did not occur in California.  *See id.* at 1159.

In *Schering Corp. v. First DataBank Inc.*, No. C 07-01142 WHA, 2007 WL 1176627 (N.D. Cal. Apr. 20, 2007),[15] the federal district court applied New Jersey choice-of-law rules – the District of New Jersey had transferred the action to the Northern District of California pursuant to 28 U.S.C. § 1404(a) – and, in so doing, determined that a choice-of-law determination would be necessary "on an issue-by-issue basis." *Id.* at *4.  Thus, the court looked to whether California and New Jersey both had anti-SLAPP statutes.  *See id.*  Under the Restatement (Second) Conflict of Laws – upon which New Jersey relies heavily in conducting the necessary analysis – the *Schering* court noted that for "multistate defamation" cases "the state of most significant relationship will usually be the state where the [defamed] corporation, or

---

[15] Plaintiffs' only citation to support the contention that California's anti-SLAPP law would not apply to the two Illinois statutory claims is to *Schering*.

other legal person, had its principal place of business at the time, if the matter complained of was published in that state." *Id.* at *5. Further, in analyzing the factor of the "states' competing interests and interstate comity," the *Schering* court ultimately concluded that "[t]he California anti-SLAPP statute should apply only to 'wholly domestic concerns' and not the 'multi-state situation.'" *Id.* at *6 (quoting *Fu v. Fu*, 733 A.2d 1133, 1142 (1999)).

Thus, as is the case with California choice of law analysis generally, both *Competitive Technologies* and *Schering* assessed choice of law on an issue-by-issue basis. Both would clearly support the view that California's anti-SLAPP statute would not apply *at least* with respect to Plaintiffs' two Illinois statutory claims, either because the speech at issue and the parties to this case have little connection to California (or at least little connection to California *in particular*[16]), Illinois would be the "state of most significant relationship," and/or this case does not consist of a "wholly domestic concern," but is instead a "multi-state" case.[17]

The California Court of Appeal has ruled that at least certain conduct occurring in foreign countries is not conduct that is subject to California's anti-SLAPP statute, because it does not involve conduct protected by the United States or California Constitutions. *See Guessous v. Chrome Hearts, LLC*, 179 Cal.App.4th 1177, 1185-87 (2009) (concerning the filing of lawsuits in France). *But see Summerfield v. Randolph*, 201 Cal.App.4th 127, 137 (2011) (holding that filing in foreign court in order to influence determination of issues pending in California court *is* subject to anti-SLAPP). This manner of analysis, while it does recognize some territorial limits on the anti-SLAPP statute's application, might suggest that *Competitive Technologies* and *Schering* have taken their analysis too far in determining that California's anti-SLAPP statute does not apply simply because the underlying conduct was "multi-state" or occurred outside California. Of course, *Guessous* involved only breach of contract and declaratory relief claims, both presumably brought under California law. *See Guessous*, 179 Cal.App.4th at 1182.

---

[16] Certainly it is true both that 1) the right to free speech protects, to some extent, listeners/readers as well, *see Gerawan Farming, Inc. v. Lyons*, 24 Cal.4th 468, 485 (2000); *Huntley v. Pub. Utils. Comm'n*, 69 Cal.2d 67, 72 (1968); *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1027 n.5 (9th Cir. 1998), and 2) the distribution of this speech over the Internet obviously extends to California listeners. But California is not the only state in the union (or the United States, the only country in the world) with access to the Internet. It, therefore, has no *particular* interest in this case.

[17] *Global Relief v. N.Y. Times Co.*, No. 01 C 8821, 2002 WL 31045394 (N.D. Ill. Sept. 11, 2002), would not aid Midley on this question because, in that case, the Northern District of Illinois – also applying depecage – merely assumed California's anti-SLAPP statute would be applicable for sake of argument (because it did not change the outcome) where the speakers in question were "California speakers" – a California corporation (publisher of the San Francisco Chronicle – and two of its employees. *See id.* at *10-12.

*Summerfield* likewise involved a malicious prosecution claim under California law. *See Summerfield*, 201 Cal.App.4th at 137.

  In the end, whether viewed as the Court 1) determining that a choice of law analysis would be entirely inappropriate here because of Plaintiffs' selection of Illinois statutes for its two state statutory claims, 2) deciding that a choice of law analysis would be appropriate but for the fact that the anti-SLAPP statute is a *procedural* statute, yet still concluding that *Competitive Technologies* and *Schering Corp.* reached the right conclusion as to application of California's anti-SLAPP statute on these facts, or 3) deciding that a choice of law analysis would be appropriate, and that the anti-SLAPP statute is *substantive*, yet nevertheless concluding at the third step of the "governmental interests" analysis that Illinois's interests would be more impaired (because of that jurisdiction's ties to Plaintiffs), the outcome here is the same – the Court will not apply California's anti-SLAPP statute to Plaintiffs' second and third claims.

  3. <u>Common Law Claims</u>

  Whatever the Court might conclude about application of California's anti-SLAPP statute to Plaintiffs' Illinois statutory claims, Plaintiffs' only argument for why California law (including California's anti-SLAPP statute) should not apply to the seven (or eight, depending on how the claim for declaratory relief is viewed) state common law claims is based upon its assertion that choice of law principles would dictate that Illinois law would apply. Unlike their two state law statutory claims, Plaintiffs' common law claims are not specifically tied to the common law of any particular jurisdiction. As such, for purposes of determining which substantive law applies to those claims, the Court would, again, likely be justified in applying California substantive law as the default. *Deutsch*, 324 F.3d at 716.

  One further difficulty with Plaintiffs' argument is that they have made no attempt to satisfy their burden, as the proponent of the application of a foreign law, to demonstrate an actual conflict between *substantive* California and Illinois law with respect to any of these seven claims.[18] *See Wash. Mut. Bank, FA v. Superior Court (Briseno)*, 24 Cal.4th 906, 919 (2001) ("Under the first step of the governmental interest approach, the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California."); *see also Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d

---

[18] Indeed, to the extent Plaintiffs have made an effort to compare the two states' substantive laws, they have argued that false accusations of a crime constitute per se defamation and trade libel under *both* Illinois and California law.

1135, 1138 (9th Cir. 2003) ("When neither party identifies a meaningful conflict between California law and the law of another state, California courts apply California law."); *Vaughn v. LJ Int'l, Inc.*, 174 Cal.App.4th 213, 227 (2009) ("The defense argued that Delaware law regarding a prefiling demand requirement should apply pursuant to the internal affairs doctrine, but made no showing of a difference between California and Delaware law.  The court's decision to apply California law was therefore based on the lack of a showing of a true conflict of law rather than rejection of the internal affairs doctrine.") (omitting internal citation) (discussing *Shields v. Singleton*, 15 Cal.App.4th 1611, 1621 (1993)).  As such, generally speaking, the Court would be inclined to apply California law with respect to the substance of Plaintiffs' common law claims.

Nevertheless, insofar as the Court is to undertake a choice of law analysis for each issue in the case (as discussed further above), the Court would still have to consider whether there would be a "conflict" between California's and Illinois's anti-SLAPP laws with respect to Plaintiffs' common law claims.  Given that the Court has already concluded, in the context of voluntary-dismissal related proceedings, that Illinois's statute would not (or likely would not) apply, there is likely such a conflict here.  As such, the analysis would ordinarily turn to considerations of comparative impairment of California's and Illinois's interests.

Of course, neither *Competitive Technologies* nor *Schering Corp.* involved state statutory claims – they involved, respectively, 1) non-statutory claims for abuse of process and unfair competition and 2) non-statutory claims for trade libel, negligent publication, and tortious interference with economic advantage.  *See Competitive Technologies*, 286 F.Supp.2d at 1125-27; *Schering Corp.*, 2007 WL 1176627, *2, 10 & n.8.  The question thus presents itself:  if *Competitive Technologies* and *Schering Corp.* are persuasive with respect to the question of whether California's anti-SLAPP statute should apply, why should the Court approach Plaintiffs' common law claims any differently than their state statutory claims?  Whether statute- or common law-based, the allegations still concern events that had minimal connections to California, unless the Court is to reach the conclusion that virtually anything that happens on the Internet is sufficiently tied to California because at least one person in California has a computer and can read.

One primary difference between this case, on the one hand, and *Competitive Technologies* and *Schering Corp.*, on the other, is choice of forum.  *Competitive Technologies*

was first filed in Illinois, *see id.* at 1124, and *Schering Corp.* was first filed in New Jersey, whereas this case was first filed here, in California.  This made some difference (albeit under application of New Jersey's choice of law principles) in *Schering Corp.  See* 2007 WL 1176627, *5.  The Court could reasonably conclude that this distinction makes all the difference with respect to which state's anti-SLAPP laws should apply to Plaintiffs' common law claims (while Plaintiffs would still benefit from the approach taken in *Competitive Technologies* and *Schering Corp.* with respect to the two claims clearly based in Illinois statutory law).  Where a plaintiff voluntarily elects a California forum while raising general common law claims, California's general interest in "safeguard[ing] the free flow of information," *Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 785 F.Supp.2d 799, 822 (N.D. Cal. Mar. 27, 2011) (citing, among other things, Cal. Code Civ. Proc. § 425.16 et seq.), might then be seen as overriding the fact that this lawsuit has, in the end, little particular connection to this forum.  *See also Schroeder v. Irvine City Council*, 97 Cal.App.4th 174, 196 (2002) ("There is a substantial governmental interest in deterring unmeritorious lawsuits generally, and that interest assumes greater weight in the arena governed by section 425.16:  unmeritorious lawsuits that can chill the defendant's exercise of First Amendment rights.").  It is for this reason that, at this point in time, the Court concludes California's anti-SLAPP statute would apply to the common law claims Plaintiffs have advanced in the FAC.